| | |
|---|---|
| **DAVID A. HAGEN,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |
| ) | |

**THIS MATTER** is before the Court on the parties' cross-motions for summary judgment on Petitioner's 28 U.S.C. § 2255 motion. (Doc. Nos. 16, 19, 22, 23).

## I. BACKGROUND

In February 2009, by way of a second superseding indictment, the grand jury charged Petitioner with conspiracy to commit securities fraud in violation of 18 U.S.C. § 371 ("Count One"), conspiracy to commit mail fraud and wire fraud in violation of 18 U.S.C. § 1349 ("Count Two"), and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) ("Count Three"). Steven Meier, as retained counsel, represented Petitioner. The Court peremptorily set the trial for 4 May 2009.

Approximately one month prior to trial, Petitioner filed *pro se* a motion requesting that Meier be dismissed as counsel and that Petitioner be allowed to proceed *pro se*. One day later, Meier filed a motion to withdraw as counsel. Shortly thereafter, the Court held a hearing on those motions, allowed Petitioner to proceed *pro se*, and directed Meier to continue to prepare for trial and remain as standby counsel. Just prior to jury selection, and after some discussion with the Court, Petitioner ultimately agreed to proceed with Meier representing him. Thus,

Meier acted as defense counsel, not standby counsel, throughout the nine-day trial.

The jury convicted Petitioner of all counts. In November 2009, the court sentenced Petitioner, who Meier still represented, to a total term of imprisonment of 540 months. Petitioner, with the assistance of new counsel, appealed his convictions and sentence. The Fourth Circuit Court of Appeals affirmed. United States v. Hagen, 468 F. App'x 373 (4th Cir. 2012). Petitioner filed a petition for a writ of certiorari, which the Supreme Court denied on 1 October 2012. Hagen v. United States, No. 11-1508 (U.S.).

On 1 July 2013, Petitioner timely filed his § 2255 motion. (Doc. No. 1). On 11 July 2013, on initial review of the motion, the Court ordered the Government to file an answer or other response within 60 days. (Doc. No. 3). In the meantime, Petitioner filed a number of motions, including ones to amend the § 2255 motion, which the Court allowed. (Doc. Nos. 7, 10, 11, 13, 14, 17). On 15 October 2013, Petitioner filed a motion for summary judgment. (Doc. No. 16). On 7 January 2014, Petitioner filed a second motion for summary judgment. (Doc. No. 19). Shortly thereafter, the Court allowed the government's motions for extension of time, and on 15 January 2014, the Government filed its motion for summary judgment and response to Petitioner's § 2255 motion. (Doc. Nos. 18, 21, 20, 22, 23). On 19 February 2014, Petitioner filed a response in opposition to the Government's motion for summary judgment. (Doc. No. 30). On 19 March 2014, he filed a reply to the Government's response to his § 2255 motion. (Doc. No. 32). On 24 March 2014, Petitioner filed his third motion for summary judgment. (Doc. No. 33). Finally, on 22 April 2014, Petitioner filed a document entitled "Notice of Evidence in Petitioner's Motion to Vacate." (Doc. No. 34).

## II. DISCUSSION

Pursuant to the Rules Governing Section 2255 Proceedings, if a motion is not dismissed

on initial review, as is the case here, "the judge must review the answer, any transcripts and records of prior proceedings, and any [additional] materials submitted . . . to determine whether an evidentiary hearing is warranted." Rule 8(a). A district court may dismiss a habeas motion without an evidentiary hearing when the pleadings and additional materials submitted by the parties conclusively show that a petitioner is not entitled to relief on any of his claims. Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970). Furthermore, pursuant to Federal Rule of Civil Procedure 56, summary judgment for the Government is appropriate when the pleadings and additional materials, viewed in the light most favorable to the petitioner, present no genuine issues of material fact that could lead a rational trier of fact to find that the petitioner is entitled to relief. See Rule 12 of Rules Governing § 2255 Proceedings (Federal Rules of Civil Procedure apply to habeas proceedings to the extent that they are not inconsistent with applicable statutes or the habeas rules); Blackledge v. Allison, 431 U.S. 63, 80-81 (1977) (summary judgment procedure may be used to test habeas corpus petition); United States v. White, 366 F.3d 291, 300 (4th Cir. 2004) ("[S]ummary judgment provides a viable mechanism for disposing of even non-frivolous habeas petitions in the proper case." (citing Blackledge, 431 U.S. at 80-81)). With these standards in mind, the court will consider Petitioner's claims.

By way of his § 2255 motion and several amendments thereto, Petitioner asserts the following claims for relief:

1. Meier operated under a financial conflict of interest which caused him to ineffectively represent Petitioner (Doc. No. 1-1, at 15-22);[1]

2. Meier was ineffective by failing to investigate and prepare a defense, call witnesses on

---

[1] All page citations to documents filed in this case and the underlying criminal proceeding, except to the trial transcripts, are to the page numbers electronically generated by cm/ecf.

Petitioner's behalf at trial, and present any exculpatory evidence (id. at 22-24);

3. Petitioner's Fifth and Sixth Amendment rights to call witnesses and present evidence were violated (id. at 24-26);

4. Meier was ineffective by failing to object to the constructive amendment of Count Three (id. at 27-30);

5. Petitioner's Fifth Amendment right to due process was violated by the constructive amendment of Count Three (id. at 30-32);

6. Meier was ineffective by failing to raise a Santos merger defense to Count Three (id. at 32-35);

7. Petitioner's Fifth Amendment right against double jeopardy was violated by his conviction on Count Three (id. at 35-37);

8. Meier was ineffective by failing to argue that the three conspiracy counts were multiplicitous (id. at 37-42);

9. Petitioner's Fifth Amendment right against double jeopardy was violated by his convictions on Counts Two and Three (id. at 43-47);

10. Petitioner's Sixth Amendment right to counsel was violated because he did not knowingly waive his right to counsel (id. at 47-50);

11. Petitioner's Fifth, Sixth, and Fourteenth Amendment rights were violated by Petitioner's inability to adequately prepare for trial while he was proceeding *pro se* (id. at 51-54);

12. Petitioner's Sixth Amendment right to counsel was violated because the Court failed to inquire into Meier's conflict of interest, advise Petitioner of the conflict, and obtain Petitioner's waiver of the conflict (id. at 54-57);

13. Petitioner's Fifth, Sixth, and Fourteenth Amendment rights were violated when the Court

deceived Petitioner into accepting the representation of Meier (Doc. No. 7);

14. The Court's preponderance of the evidence jury instruction during the forfeiture phase and its determination of the amount of loss at sentencing deprived Petitioner of his Sixth Amendment right to have a jury determine facts beyond a reasonable doubt as articulated in Apprendi v. New Jersey, 530 U.S. 466 (2000) (Doc. No. 11); and,

15. The Court lacked jurisdiction to render judgment on Count Two (Doc. No. 14).

    A. <u>Ineffective Assistance of Counsel Claims</u>

Petitioner asserts multiple ineffective assistance counsel of claims. Under the principles of Strickland v. Washington, 466 U.S. 668 (1984):

> a meritorious ineffective assistance claim must demonstrate two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. Under the second prong of *Strickland*'s test, there is a "strong presumption" that counsel's strategy and tactics fall "within the wide range of reasonable professional assistance." For counsel's trial performance to be deficient, he must have "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that "counsel's representation fell below an objective standard of reasonableness." To establish prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Under *Strickland,* a reasonable probability is a "probability sufficient to undermine confidence in the outcome."

Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (citations omitted), cert. denied, 122 S. Ct. 2311 (2002).

However, "[w]hen a petitioner premises his ineffective assistance claim on the existence of a conflict of interest, the claim is subjected to the specific standard spelled out in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), instead of that articulated in *Strickland*." United States v. Nicholson, 475 F.3d 241, 249 (4th Cir. 2007) (citing Strickland,

5

466 U.S. at 692). "*Sullivan* [] requir[es] the petitioner to show, in order to prevail on an actual conflict of interest claim, that (1) petitioner's lawyer operated under a 'conflict of interest' and (2) such conflict 'adversely affected his lawyer's performance.'" United States v. Nicholson, 611 F.3d 191, 195 n.2 (4th Cir. 2010) (quoting Sullivan, 446 U.S. at 348). "[T]he possibility of conflict is insufficient to impugn a criminal conviction." Sullivan, 446 U.S. at 350.

        1.    *Claim 1*

With Claim 1, Petitioner contends that Meier operated under an actual financial conflict of interest which compromised his representation of Petitioner. Specifically, this claim is premised on the contention that "Meier developed a pecuniary conflict when Movant's wife failed to pay the balance of counsel's requested $75,000 retainer." (Doc. No. 1-1, at 15). According to Petitioner, this conflict resulted in Meier's adoption of a "no-defense strategy," i.e., the presentation of no defense witnesses or evidence. (Doc. No. 1, at 4; Doc. No. 1-1, at 15).

Petitioner has not shown that Meier had a financial conflict of interest. See Caderno v. United States, 256 F.3d 1213, 1218 (11th Cir. 2001) ("[I]t is manifest that [the petitioner] must establish that an actual financial conflict existed by showing that his counsel actively represented his own financial interest during [the petitioner's] trial, rather than showing the possibility of an actual financial conflict." (citations omitted)). Meier's motion to withdraw as counsel was based on the assertions Petitioner raised in his (Petitioner's) motion to dismiss Meier. (Doc. No. 25-1, ¶ 6). Meier did not mention Petitioner's failure to fully pay him as a ground for withdrawal. (Cr. Doc. No. 52, at 1).[2] Rather, he cited the assertions Petitioner raised about Meier's competence in his representation of Petitioner and about the adequacy of his trial preparation and

---

[2]Citations to documents filed in Petitioner's underlying criminal case are designated by "Cr. Doc. No."

stated, "While counsel would deny the allegations complained of by the Defendant, it is clear to counsel that various conflicts and irreconcilable differences have arisen between counsel and Defendant making counsel's continued representation of Defendant impossible." (Id.). At the hearing on Meier's motion to withdraw and Petitioner's motion to dismiss Meier, the Court questioned Meier about whether his retainer had been paid. Meier stated that less than half the retainer had been paid, and he had told Petitioner that he "would nonetheless honor [his] commitment to represent [Petitioner] regardless, and [he] understood that in all likelihood that [Petitioner] would not be able to come up with the remaining balance." (Cr. Doc. No. 161, at 8-9). Meier explained further, "I did not back out of my representation when it became clear, and this was sometime ago, when it became clear that I was not going to be further retained. So I have stayed in it. I have honored my obligation to him and to the court and proceeded forward with this." (Id. at 9). Petitioner himself acknowledged that Meier maintained his commitment, yet Petitioner took issue with Meier's suggestion that his work had consumed the amount previously paid on retainer. (Id.). In sum, Meier did not operate under a financial conflict of interest.

Even if Meier did, there is nothing linking the purportedly ineffective defense strategy to the fact that Meier had not been fully paid. See Nicholson, 475 F.3d at 251-52 (recognizing that to establish an attorney's conflict of interest adversely effected the attorney's performance, the petitioner "must show that 'the defense counsel's failure to pursue [the alternative] strategy or tactic was linked to the actual conflict'" (quotation omitted)). Meier made the strategic decision not to call as defense witnesses those persons Petitioner wanted to call and to use documents at trial he thought were helpful to Petitioner's case. (Doc. No. 25-1, ¶ 5). Meier's defense strategy had nothing to do with not being fully paid. (See id.)

7

Petitioner cannot establish that Meier labored under a financial interest that adversely affected his representation of Petitioner. See Caderno, 256 F.3d at 1218-19 (affirming the district court's denial of § 2255 motion based, in part, on the petitioner's speculative claim that his counsel had an actual financial conflict of interest because the petitioner was unable to pay counsel the full retainer fee). Accordingly, the Government is entitled to summary judgment on this claim.

2. *Claim 2*

Next, Petitioner claims that Meier was ineffective by failing to investigate and prepare a defense, call witnesses at trial on Petitioner's behalf, and present any exculpatory evidence at trial. Petitioner's contentions about Meier's failure to adequately investigate and prepare are completely belied by the extensive record in the underlying proceeding, as evidenced by the pretrial motions Meier filed, his thorough cross-examination of the Government's witnesses, his thorough examination of Petitioner, and his statements and arguments at trial. Furthermore, to the extent Petitioner complains about Meier's failure to call the witnesses or to present the exculpatory evidence which Petitioner had identified in his Trial Guide and provided to Meier, (Cr. Doc. Nos. 117-1, 117-2), Meier testifies as follows:

> Defendant Hagen's claim that I did not read his trial guide is also not true. I spent several hours in July both with Mr. Hagen and on my own reviewing the merits of his arguments. I found the guide and our conversations to be useful by way of establishing chronology, biographies, and the details of his business; I did not feel, however, that I was bound in any way such that my professional judgment as to the best strategy in trying his case was subjugated to his trial guide. To the extent that I thought a document would be helpful to his case, I used it at trial. Likewise, I filed motions that I felt had legal merit and would help his defense. As to defense witnesses, there were several problems. First, most of the witnesses hated the defendant or at the very least were unwilling to testify in his behalf. Second, many were better

8

> witnesses for the government and in fact some were called for the government's case in chief. Third, not all of them were relevant. Fourth, some of them could not be found. Fifth, some were potentially out of the country or jurisdiction including the Bahamas and Canada which called into question the logistical aspects of the subpoena. Sixth, I did not feel that it was in his best strategic interests to call many if not all of these witnesses. . . . The fact that Mr. Hagen did not agree with my assessment of his witnesses does not mean that I did not carefully consider their value. I merely felt that they had limited merit, many had significant negative value, and most if not all would not advance his defense.

(Doc. No. 25-1, ¶ 5).

Meier's decisions about what witnesses, if any, to call and what documents, if any, to use at trial were strategic and reasonable. As such, Petitioner cannot demonstrate Meier's performance in this regard was deficient. See Strickland, 466 U.S. at 690-91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."). Because Petitioner cannot establish Meier's investigation, preparation for trial, and strategic decisions regarding witnesses and evidence to use at trial fell below an objective standard of reasonableness, the Government is entitled to summary judgment on Claim 2.

3. *Claim 4*

Petitioner additionally claims that Meier was ineffective by failing to object to the constructive amendment of Count Three. Specifically, he claims that Meier should have objected to the court's jury instructions on Count Three because those instructions omitted all the elements of 18 U.S.C. § 1956(h). (Doc. No. 1-1, at 28).

Count Three charged Petitioner with conspiring to commit money laundering in violation of 18 U.S.C. § 1956(h), with the objects of the conspiracy alleged as violations of §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 1956(a)(2)(A), 1956(a)(2)(B)(i), and 1957. (Cr. Doc. No. 46, at 15-16).

> To obtain a conviction for money laundering conspiracy under 18 U.S.C. § 1956(h), the Government must prove the following essential elements: (1) the existence of an agreement between two or more persons to commit one or more of the substantive money laundering offenses proscribed under 18 U.S.C. § 1956(a) or § 1957; (2) that the defendant knew that the money laundering proceeds had been derived from an illegal activity; and (3) the defendant knowingly and voluntarily became part of the conspiracy.

United States v. Green, 599 F.3d 360, 371 (4th Cir. 2010) (citation omitted). Notably, commission of an underlying offense that is one of the objects of the conspiracy is not an element of a money laundering conspiracy. United States v. Amaya, No. CR 11-4065-MWB, 2012 WL 3288082, at *25 (N.D. Iowa Aug. 10, 2012) ("[P]roof of the commission of a substantive money-laundering offense is *not* an element of a money-laundering conspiracy offense." (emphasis in original)), aff'd, 731 F.3d 761 (8th Cir. 2013); see also United States v. Tucker, 376 F.3d 236, 238 (4th Cir. 2004) ("Proof of a conspiracy does not require proof that the object of the conspiracy was achieved or could have been achieved, only that the parties agreed to achieve it." (citation omitted)). Therefore, the district court is not required to instruct the jury on the elements of each of the substantive offenses identified as objects of such a conspiracy.

In Petitioner's case, in the jury instructions, the Court did not explicitly identify "the defendant's knowledge that the money laundering proceeds had been derived from an illegal activity" as an essential element of Count Three that the government must prove beyond a reasonable doubt. (See Cr. Doc. No. 173, at 1859-60). However, even assuming Meier should

have objected to the instructions on Count Three on this basis, Petitioner cannot show that he was prejudiced by Meier's failure to do so. First, the court's instructions to the jury, when viewed as a whole, adequately covered that element. In the portion of the instructions identifying the ways in which the Second Superseding Indictment alleged Petitioner and others conspired to commit money laundering, each of those ways identified mentions proceeds or property from an unlawful activity. (Id. at 1860-61). And, the court instructed the jury that to find Petitioner guilty, that it must find beyond a reasonable doubt that he joined a conspiracy to commit money laundering in at least one of those ways and he did so knowingly. (See id.) Second, and more importantly, given the vast evidence against Petitioner, including his admissions to the investigating law enforcement agent about his involvement in all the charged conspiracies, (see Cr. Doc. No. 172, at 1318-42, 1360-68), there is no reasonable probability that the jury's verdict on Count Three would have been not guilty had the court included an instruction specifically identifying that as a separate element. Accordingly, Petitioner cannot establish prejudice from Meier's failure to object to the jury instructions given on Count Three, and the Government is entitled to summary judgment on this claim.

    4.    *Claim 6*

Petitioner claims that Meier should have argued or raised a "merger" defense to Count Three. Petitioner relies on the decision in United States v. Santos, 553 U.S. 507 (2008), in support of this claim.[3] The Fourth Circuit summarized Santos, in relevant part:

> A four-Justice plurality concluded that the term "proceeds" in the money-laundering statute was ambiguous—it could mean either

---

[3]The money laundering statute was amended in May 2009, with such amendment "effectively" overruling Santos. United States v. Simmons, 737 F.3d 319, 324 (4th Cir. 2013). Because the amendment was not in effect at the time of Petitioner's conduct charged in Count Three, the court will consider this claim based on Santos. See id.

11

"receipts" or "profits"—and invoked the rule of lenity to resolve the ambiguity in favor of the defendant. *Id.* at 514, 128 S.Ct. 2020 (plurality opinion). The plurality thus concluded that the money-laundering statute only covers transactions involving "profits" of criminal activity. *Id.* at 524, 128 S.Ct. 2020.

In rejecting the statute's broader interpretation, the plurality found that construing "proceeds" to mean "receipts" would create a "merger problem." *Id.* at 515, 128 S.Ct. 2020. The plurality explained that those who run illegal gambling businesses must necessarily pay their accomplices and the lottery's winners. If a defendant could commit money laundering merely by "paying the expenses of his illegal activity," all illegal gambling businesses would involve money laundering, and the Government could punish a defendant twice for an offense that Congress intended to punish only once. *Id.* at 517, 128 S.Ct. 2020.

This merger problem, the plurality noted, is not limited to illegal gambling. Writing for the plurality, Justice Scalia explained:

> Few crimes are entirely free of cost, and costs are not always paid in advance. Anyone who pays for the costs of a crime with its proceeds—for example, the felon who uses the stolen money to pay for the rented getaway car—would violate the money-laundering statute. And any wealth-acquiring crime with multiple participants would become money laundering when the initial recipient of the wealth gives his confederates their shares. Generally speaking, any specified unlawful activity, an episode of which includes transactions which are not elements of the offense and in which a participant passes receipts on to someone else, would merge with money laundering.

*Id.* at 516, 128 S.Ct. 2020. The plurality concluded that interpreting "proceeds" to mean "profits" would resolve the merger problem by ensuring that defendants cannot be convicted of money laundering merely for paying the essential "crime-related expenses" of the predicate crime. *Id.* at 515, 128 S.Ct. 2020.

United States v. Simmons, 737 F.3d 319, 322-23 (4th Cir. 2013).

Drawing on Santos, Petitioner appears to contend that because the evidence at trial shows that all of the proceeds from the two fraud-related conspiracies were used to pay expenses to further those conspiracies, he cannot be guilty of the money laundering conspiracy in addition to

12

the other conspiracies. (See Doc. No. 1-1, at 33). The testimony to which Petitioner cites to support this contention shows the following. The co-conspirators used the proceeds from their scheme to buy back some of the stock shares they were fraudulently promoting, GTX Global, in an effort to support the market, i.e., to maintain the share price and keep buyers interested. (See Cr. Doc. No. 168, at 501; Cr. Doc. No. 172, at 1285). Under the co-conspirators' written agreement, $2 million from the scheme would be given to GTX Global for operating expenses and 27% of the proceeds from that scheme would be paid to a company controlled by co-conspirator Jeremy Jaynes for manufacturing websites to promote the scheme. (Cr. Doc. No. 168, at 542, 589-90). An individual named Warren Hanson was paid by GTX Global two cents per share for conducting trades. (Cr. Doc. No. 170, at 777). Petitioner (presumably on behalf of GTX Global) paid over $100,000 to an individual named Chuck Manning "to get him to continue to work for the benefit of GTX Global." (Cr. Doc. No. 173, at 1572). Petitioner wired or otherwise "sent" money from various accounts to GTX Global. (Cr. Doc. No. 173, at 1684). The investors in GTX Global would be paid back for their pre-subscription agreements (presumably meaning the amount of their investments). (Cr. Doc. No. 172, at 1532). At best, this evidence shows that the co-conspirators used *some* of the proceeds from their scheme to pay expenses associated with operating the scheme. But, what the evidence at trial also shows is that the co-conspirators agreed that, separate and apart from the payment of those expenses, they would conceal their profits from the scheme by transfers through various foreign banks and in fact did so. (Cr. Doc. No. 168, at 473-74, 542-43, 553-54, 600-01, 617-19, 622-26; Cr. Doc. No. 169, at 637-41; Cr. Doc. No. 170, at 869, 874-75; Cr. Doc. No. 171, at 1231-52). It is *those* transactions which underlie the money laundering charge. As such, a Santos merger problem does not arise here. See United States v. Halstead, 634 F.3d 270, 279-80 (4th Cir. 2011) ("An

13

individual cannot be convicted of money laundering for paying the 'essential expenses of operating' the underlying crime. But when the financial transactions of the predicate offense are different from the transactions prosecuted as money laundering, the merger problem recognized in *Santos* does not even arise." (citing Santos, 553 U.S. at 528 (Stevens, J., concurring))).

With no merger problem, Petitioner was not prejudiced by counsel's failure to raise any argument or assert a defense to Count Three based on Santos. The government is entitled to summary judgment on Claim 6.

     5.    *Claim 8*

With his final challenge based on Meier's performance, Petitioner contends that Meier should have argued that the conspiracy counts were multiplicitous. "The rule against multiplicity is rooted in the Double Jeopardy Clause of the Fifth Amendment, which . . . prohibit[s] 'successive prosecutions for the same offense' as well as 'the imposition of cumulative punishments for the same offense in a single criminal trial.'" United States v. Shrader, 675 F.3d 300, 313 (4th Cir. 2012) (citation omitted). The Fourth Circuit Court of Appeals has explained:

> When a single course of conduct violates multiple statutes, multiple punishments may be imposed without violating the Double Jeopardy Clause, if that is what Congress intended. Our only task is to determine whether Congress intended to impose multiple punishments. We begin the inquiry into legislative intent by examining "whether proof of each crime 'requires proof of an additional fact which the other does not.'" If the statutory elements "do not overlap, then multiple punishments are presumed to be authorized absent a clear showing of contrary Congressional intent."

United States v. Chandia, 514 F.3d 365, 372 (4th Cir. 2008) (citations omitted).

The elements of a conspiracy to commit securities fraud are: (1) an agreement to commit

securities fraud; (2) the defendant knowingly and willfully became a member of the conspiracy; (3) one of the conspirators committed an overt act; and, (4) that overt act was committed in an effort to effect or accomplish some object or purpose of the agreement. (Cr. Doc. No. 173, at 1841). The elements of a conspiracy to commit mail or wire fraud are: (1) an agreement to commit mail or wire fraud and (2) the defendant knowingly and willfully became a member of the conspiracy. (Id. at 1853). As previously recognized, the elements of a money laundering conspiracy are: (1) an agreement to commit a money laundering offense under 18 U.S.C § 1956(a) or § 1957; (2) the defendant's knowledge that the money laundering proceeds had been derived from an illegal activity; and (3) the defendant knowingly and voluntarily became part of the conspiracy. Green, 599 F.3d at 371. Because each statute requires proof of an element that the other ones do not, it is presumed multiple punishments are authorized, and Petitioner has not shown anything to overcome this presumption.

Therefore, Petitioner was not prejudiced by Meier's failure to argue that the charges were multiplicitous. The Government is entitled to summary judgment on Claim 8.

    C.    Petitioner's Remaining Claims

A number of bases justify the dismissal of Petitioner's remaining claims, that is, Claims 3, 5, 7, and 9 through 15.

Claims 3, 5, 7, and 9 are the purported constitutional violations underlying Petitioner's ineffective assistance of counsel claims. Other than Claim 3, in the above analysis, the Court has addressed (and rejected) these claims on the merits to conclude that Petitioner was not prejudiced by Meier's failure to object or raise the various grounds cited.

Claims 10 through 13 largely arise out of Petitioner's dissatisfaction with the court's refusal to appoint him substitute counsel in lieu of Meier and refusal to continue the trial in order

to allow him to adequately prepare *pro se* for trial. The Fourth Circuit considered (and rejected) these issues on appeal. Hagen, 468 F. App'x at 383-85, 387. As such, this court will not consider them to the extent Petitioner raises them now. See United States v. Roane, 378 F.3d 382, 396 n.7 (4th Cir. 2004) ("Because the Defendants have not pointed to any change in the law that warrants our reconsideration of these claims, we agree with the district court that they cannot relitigate these issues [in a § 2255 proceeding]."); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (recognizing that a § 2255 petitioner cannot "recast, under the guise of collateral attack, questions fully considered by th[e appellate] court").

In addition, the court agrees with the Government that all the remaining claims are procedurally barred.

> In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel. And, in order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence.

United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999) (citations omitted).

According to Petitioner, he has not procedurally defaulted some of these remaining claims because they are "extra-record claims that require development of facts outside of the trial record." (Doc. No. 30, at 30 (citing Bousley v. United States, 523 U.S. 614, 621 (1998)); see also Doc. No. 1-1, at 26, 31, 36, 47, 50, 54, 57; Doc. No. 7, at 7; Doc. No. 11, at 17-18). In Bousley, the Court recognized a limited exception to the procedural default rule. 523 U.S. at

16

621. The exception exists "for a claim that a plea of guilty had been coerced by threats made by a Government agent, when the facts were 'dehors the record and their effect on the judgment was not open to consideration and review on appeal.'" Id. at 621-22 (quoting Waley v. Johnston, 316 U.S. 101, 104 (1942) (per curiam)).

Petitioner's claims do not fall within this limited exception. First, Petitioner is not challenging the voluntariness of a guilty plea; Petitioner was convicted by a jury. Second, the Trial Guide, to which Petitioner points in support of these claims, was a matter of the underlying criminal case record, albeit under seal. (Cr. Doc. Nos. 117-1, 117-2). Petitioner could have raised his constitutional claims on direct appeal and relied on his Trial Guide to support those claims. Because Petitioner's claims do not require factual development outside the trial record, they are procedurally defaulted unless some other ground saves them.

In this vein, Petitioner contends that he can show cause and prejudice to overcome procedural default as to most of his remaining claims. (Doc. No. 30, at 30; see also Doc. No. 1-1, at 31, 36, 47, 50, 54, 57; Doc No. 7, at 7; Doc. No. 11, at 17-18). Specifically, he asserts

> [d]uring Movant's direct appeal, BOP government officials received and withheld Movant's appellate briefs sent by appointed counsel as "Legal Mail." Several times appellate counsel sent said briefs by Federal Express. BOP officials signed for delivery, but inexplicably withheld and never released Movant's vital, time-critical appellate briefs. Movant filed all appropriate Administrative Remedies as required by procedure (see Exhibit attached hereto) without relief. This interference by government officials made Movant unable to fully participate in his direct appeal (CAUSE). Movant suffered actual prejudice when in consequence he was unable to suggest this issue to appellate counsel to raise under direct appeal.

(Doc. No. 1-1, at 31).

Petitioner's inability to review the appellate briefs did not prevent Petitioner from

communicating with appellate counsel about the issues he thought should be raised on appeal. Furthermore, even if Petitioner had received the briefs and had suggested these issues to appellate counsel to raise on appeal, appellate counsel may have decided not to include them on appeal. See United States v. Baker, 719 F.3d 313, 318 (4th Cir. 2013) ("In particular, counsel is not obligated to assert all nonfrivolous issues on appeal, as there can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." (internal quotation marks, alterations, and citation omitted)). Thus, Petitioner has not shown cause and prejudice to excuse his default of these claims.

In conjunction with Claim 13, wherein he claims the court engaged in deception to induce Petitioner to accept the representation of Meier, Petitioner suggests he is actually innocent. (Doc. No. 7, at 7). To the extent Petitioner could be deemed to assert actual innocence as excusing his default of Claim 13, Petitioner must show "factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623 (citation omitted). In other words, he "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Id. (internal quotation marks and citation omitted). Even considering Petitioner's summation of the evidence in his Trial Guide, Petitioner has not met this burden.

Finally, Petitioner suggests that he is entitled to relief on three claims because the Government "failed to respond completely" to those claims. (Doc. No. 30, at 30). It is true that one section of the Government's response to Petitioner's § 2255 motion addresses Petitioner's ineffective assistance of counsel claims, i.e., Claims 1, 2, 4, 6, and 8 (Doc. No. 20, at 26-36). And, it is true that in the concluding sentence of the other section in its response, which pertains

18

to the remaining claims, the Government states, "Because Petitioner has not shown either cause or prejudice to excuse his procedural default, Grounds Three, Five, Seven, Nine, Ten, Eleven, and Twelve are not cognizable." (Doc. No. 20, at 38). However, the fact that the Government did not specifically reference Claims 13 through 15 by number in its response does not mean that the Government concedes those claims. See United States v. McDaniel, Nos. 07-20168-22-JWL, 13-2083-JWL, 2013 WL 2449499, at *1 (D. Kan. June 5, 2013) ("The rules governing § 2255 proceedings, however, do not require the government to respond to every separate claim individually . . . and a strict requirement that the government answer each and every claim is not only burdensome (where such claims are often not discernible and quite numerous) but impractical." (citation omitted)). The procedural default rule applies equally to those claims. See id. ("Moreover, even assuming that the government has failed to address one or more claims asserted by [Petitioner], the court is required to determine whether [Petitioner's] motion, on its own, alleges facts that, if true, warrant evidentiary hearing. His motion does not allege such facts.").

## III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that

1. The Government's motion for summary judgment is ALLOWED;
2. Petitioner's motions for summary judgment are DENIED;
3. Petitioner has not made "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, a certificate of appealability is DENIED; and

4. The Clerk enter judgment and close this case.

This 8 August 2014.

_____
W. Earl Britt
Senior U.S. District Judge